# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| MICHAEL S. MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:17-CV-433-TLS |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Michael S. Miller seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his applications for disability and disability insurance benefits as well as supplemental security income. The Plaintiff argues that the Commissioner wrongfully denied his applications and erred by failing to properly weigh and evaluate medical opinions of record; failing to properly formulate the Plaintiff's residual functional capacity, which caused her to rely on a flawed hypothetical to the vocational expert; and failing to support the step three Listing analysis with substantial evidence.

## BACKGROUND

On February 25, 2014, the Plaintiff filed a Title II application for a period of disability and disability insurance benefits as well as a Title XVI application for supplemental security income, alleging disability beginning on January 1, 2009. (R. at 661–68.) His claims were denied initially on December 1, 2014, and upon reconsideration on March 24, 2015. (522–27, 531–38.) On September 3, 2015, the Plaintiff appeared with counsel and testified at a hearing before an

administrative law judge (ALJ). (R. 585.) Marie Keiffer, a vocational expert, also appeared and testified at the hearing. (*Id*.) The ALJ rendered an unfavorable decision, and the Plaintiff requested review by the Appeals Council on January 5, 2016. (R. 587–89.) The Appeals Council remanded the case back to the ALJ for further review. (R. 507.) The ALJ held a second hearing on August 24, 2016, at which vocational expert (VE) Richard Riedl testified. (R. 637.) On November 17, 2016, the ALJ denied the Plaintiff's applications, finding that he was not disabled as of his alleged onset date. (R. 62–85.) On August 15, 2017, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 1–4.)

On October 14, 2017, the Plaintiff filed this claim [ECF No. 1] in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. §§ 423(d)(2)(A), 1382c(a)(3)(B).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. §§ 404.1520, 416.920. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the

Plaintiff has been unable to engage in SGA since his alleged disability onset date, January 1, 2009. (R. 65.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting his ability to do basic work activities under §§ 404.1520(c), 416.920(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including bilateral knee osteoarthritis, chronic right patellar tendon dysfunction and disruption, right knee replacement surgery with subsequent perioprothetic infection, hardware removal and revision surgery, status post myocardial infarction, bipolar disorder, depression, anxiety, panic disorder, attention-deficit hyperactivity disorder, personality disorder, substance-induced mood disorder, and poly-substance dependence. (R. 65.) The ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work. (*Id*.) The ALJ also found that the Plaintiff had other medically determinable, but non-severe, impairments, including gastro-esophageal reflux disease (GERD) and hypertension, treatment for a tear to his Achilles tendon, carpal tunnel syndrome, arthritis, and dermatitis. (R. 65–66.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." §§ 404.1520(d), 416.920(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things he can still do physically, despite his limitations—to determine whether he can perform "past relevant work," §§ 404.1520(a)(4)(iv), 416.920(A)(4)(iv), or whether the claimant can

3

"make an adjustment to other work" given the claimant's "age, education, and work experience." §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1. (R. 66–70.) The ALJ then found that the Plaintiff had an RFC to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b):

> He can lift, carry, push and pull ten pounds frequently and twenty pounds occasionally, stand and walk in combination for two hours during an eight-hour workday, and sit for at least six hours throughout the workday. As to postural changes, he can climb ramps and stairs, balance, stoop, kneel, crouch and crawl on an occasional basis, but can never climb ladders, ropes, or scaffolds, and he should avoid concentrated exposure to hazards. The claimant retains the mental residual functional capacity to understand, remember, and carry out simple tasks, attend to such a task for a sufficient period to complete tasks, and manage the stresses involved with simple work. With respect to social interactions, he can relate on at least a superficial and ongoing basis with co-workers and supervisors.

(R. 70.)

The ALJ stated that this RFC "has been assessed based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all the claimant's medically determinable impairments . . . ." (R. 83.) After analyzing the record, the ALJ concluded that the Plaintiff was not disabled as of his alleged onset date. The ALJ evaluated the objective medical evidence and the extent to which it supported the Plaintiff's alleged symptoms. (R. 70–83.) In looking to the objective medical evidence, the ALJ considered—in considerable detail—opinions, evaluations, and treating records from numerous sources. But, the ALJ found that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not consistent with this and other evidence and did not support any greater limitations than expounded in the RFC. (R. 71.) This evaluation of the Plaintiff's subjective symptoms seems to have been based in large part on the Plaintiff's continuing

4

attempts to work after his alleged onset date as well as the Plaintiff's inconsistent treatment history. (R. 70–83.)

The Plaintiff has past relevant work as an air conditioning unit assembler (semi-skilled work) and a concrete pipe maker (unskilled work), both generally and actually performed at the medium to heavy exertional level. (R. 83.) The ALJ concluded that the Plaintiff was not capable of performing any past relevant work. (*Id.*) However, relying on the VE's testimony, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 84.) Ultimately, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act as of his alleged onset date and was not entitled to disability insurance benefits or supplemental security income. (R. 85.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 308. The Court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

**ANALYSIS**

The Plaintiff argues that the Commissioner wrongfully denied his applications and erred by failing to properly weigh and evaluate medical opinions of record, failing to properly

formulate the Plaintiff's RFC, and failing to support the step three Listing analysis with substantial evidence.

With respect to the ALJ's evaluation of the medical opinions of record, the Plaintiff argues that the ALJ impermissibly acknowledged selected portion of the treatment notes, disregarding the portions of the record that undermined her conclusion; failed to describe the alleged inconsistencies between treating physician Dr. Presley's opinions and the other medical sources of record; improperly characterized certain records as opinions only of Mr. Hyle, who was not an statutorily acceptable medical source, when such records were also signed by acceptable medical sources, and moreover, did not point to the evidence that was supposedly inconsistent with Mr. Hyle's opinion; improperly found Dr. Bingi's opinions unsupported by cherry-picked evidence; failed to recognize that the Plaintiff's inconsistent medical treatment could well have been due to his mental impairments rather than evidence against disability; failed to consider, or even mention, the opinion of psychologist Dr. Musgrave; and failed to address or acknowledge third-party evidence and statements, including those by SSA field office employees. The Plaintiff also asserts that the ALJ erred by failing to consider the checklist of factors contained in C.F.R. § 404.1527.

The Commissioner responds that the ALJ properly considered and weighed the medical sources and opinions of record. The Commissioner asserts that the ALJ afforded the required deference to treating source Dr. Presley, but properly discounted his opinion due to the brevity of the treating relationship and his stated unfamiliarity with the Plaintiff's complete medical history with Park Center prior to his own treatment of the Plaintiff; that the ALJ's consideration of the reported fluctuation in symptoms supported the ALJ's findings rather than showed a misunderstanding of the nature of the Plaintiff's mental illness; that the ALJ appropriately noted

inconsistencies in the record with Dr. Presley's opinion such as Dr. Von Bargen's findings that the Plaintiff's cognitive functioning was intact and mental status examination normal, Dr. Iqbal's notation of normal mental status and opinion that the Plaintiff was pitying and self-focused, and the opinions of the state agency psychological consultants, which occurred over the course of two and a half years, demonstrating longitudinal consistency; that Dr. Bingi's opinion was based only on his interview of the Plaintiff without consideration of any medical records; and that the ALJ specifically considered the third-party reports by the Plaintiff's friend and father and gave reasons for discounting their helpfulness. Notably, the Commissioner does not respond to the Plaintiff's assertion that the ALJ did not consider the opinion of treating physician Dr. Musgrave or the third-party reports of SSA field agents, nor does she respond to the Plaintiff's assertion that the ALJ failed to consider the opinion signed by Mr. Hyle, Nurse Ellsworth, and Dr. Mumtaz as a treating source opinion entitled to deference.

Generally, controlling weight is given to a treating physician's opinion only if it is well-supported by medically acceptable, objective evidence and consistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d)(2). When the treating physician's opinion is not entitled to controlling weight—such as where it is not supported by the objective medical evidence, is inconsistent with other substantial evidence in the record, or is internally inconsistent, *see Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citing *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995))—the ALJ should proceed with assessing the value of the opinion in the same way that he would any other medical evidence. *See id.* Assessing the weight to afford the opinion depends on a number of factors, such as the length, nature, and extent of the physician and claimant's treatment relationship, 20 C.F.R. § 404.1527(c)(2)(i)–(ii), whether the physician supported his or her opinions with sufficient explanations, *id.* § 404.1527(c)(3), and

whether the physician specializes in the medical conditions at issue, *id.* § 404.1527(c)(5). If the ALJ discounts the physician's opinion after considering these factors, that decision stands so long as the ALJ "minimally articulate[d]" his reasons. *Berger*, 516 F.3d at 545 (quoting *Rice v. Barnhart*, 384 F.3d 363, 372 (7th Cir. 2004)).

It is not the reviewing Court's job to determine whether the treating physician's opinion should have been given controlling weight. *See Clifford*, 227 F.3d at 869 ("[W]e review the entire record, but do not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner."). However, an ALJ must give "good reasons" for the weight afforded to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). "The ALJ must give substantial weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it." *Knight*, 55 F.3d at 314 (first citing 20 C.F.R. §§ 404.1527(c)–(d); then citing *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994); and then citing *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993)). A court on review must uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010).

### A.     Mr. Hyle's Opinion

The ALJ found that Mr. Hyle's opinion was entitled to some but not significant weight because the limitations that Mr. Hyle reported were not consistent with the medical evidence of record or with the Plaintiff's own report of daily activities including doing odd jobs. (R. 82.) Mr. Hyle's opinion notes limitations such as the inability to remember things for longer than five minutes, difficulty completing tasks, and the necessity of a representative payee if disability

9

benefits were to be awarded. (R. 1570–73) Although Mr. Hyle himself may not be an acceptable medical source, his report is also signed by two acceptable—and treating—medical sources. Therefore, this report was entitled to substantial, if not controlling, weight absent specific, legitimate reasons constituting good cause to reject it. Because the ALJ did not treat this opinion as one by a treating source, the ALJ summarily dismissed it as inconsistent with the other evidence of record, without any further citation, and awarded it some but not significant weight. This explanation is not sufficient to show specific and legitimate reasons for rejecting it.

**B.     Dr. Presley's Opinion**

With regard to Dr. Presley, a treating medical source, the Court is not convinced that the ALJ adequately explained her reasoning. Dr. Presley opined that the Plaintiff "could not maintain attention for a two-hour segment, work with others, or complete a normal work day/week for even seventy percent of the work day/week," that the Plaintiff would be absent from work more than four days per month, and that the Plaintiff "was markedly limited in his abilities to concentrate, persist and keep pace, but was capable of managing his own funds." (R. 81.)

The Social Security Regulations enumerate a series of factors for the ALJ to consider when deciding whether to give a treating physician's opinion controlling weight:

> Even when an ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ is not permitted simply to discard it. Rather, the ALJ is required by regulation to consider certain factors in order to decide how much weight to give the opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination," because the longer a treating physician has seen a claimant, and particularly if the treating physician has seen the claimant "long enough to have obtained a longitudinal picture" of the impairment, the more weight his opinion deserves; (2) the "nature and extent of the treatment relationship"; (3) "[s]upportability," i.e., whether a physician's opinion is supported by relevant evidence, such as "medical signs and laboratory findings"; (4) consistency "with the

10

record as a whole"; and (5) whether the treating physician was a specialist in the relevant area.

*Scrogham v. Colvin*, 765 F.3d 685 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(c)(2)(5)). An ALJ is not always required to explicitly analyze each of these factors where the "decision makes clear that [the ALJ] was aware of and considered many of the factors." *Schreiber v. Colvin*, 516 F. App'x 951, 959 (7th Cir. 2013). Rather, the "inquiry is limited to whether the ALJ sufficiently accounted for the factors . . . and built an 'accurate and logical bridge' between the evidence and his conclusion." *Id.* (citing *Elder*, 529 F.3d at 415–16 (affirming ALJ's decision where ALJ explicitly discussed only two of the factors)).

The Court is not convinced that the ALJ took all of these factors into account, and the lack of discussion does not permit the Court to meaningfully assess her decision to give Dr. Presley's opinion little weight. "[E]ven assuming that there had been a reason to deny controlling weight to [Dr. Presley's] opinion, the ALJ was not permitted simply to discard it." *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (internal quotations omitted). There is evidence of record that supports Dr. Presley's opinion in significant part, such as Mr. Hyle's opinion, that the ALJ did not adequately consider. Because this conclusion caused the ALJ to give great weight to the State Agency examiners' opinions over Dr. Presley's, the Court cannot say that the ALJ built an accurate and logical bridge from the evidence to her conclusions.

## C.     Dr. Musgrave's Opinion

With regard to Dr. Musgrave, the ALJ did not mention his evaluation in her decision. The Plaintiff was referred to Dr. Musgrave by his primary care provider for a mental evaluation. (R. 1854.) Dr. Musgrave interviewed the Plaintiff and issued an opinion as to the diagnoses with which the Plaintiff's symptoms were consistent and recommended courses of action. (R. 1851.)

11

Dr. Musgrave's report is consistent with Mr. Hyle's and Dr. Presley's opinions, which the ALJ discounted for lack of supporting medical evidence, and the Court cannot adequately evaluate what, if any, part this evaluating medical source played in the ALJ's evaluation.

### D. Dr. Bingi's Opinion

Although not entitled to the controlling weight normally afforded to treating physician opinions, Dr. Bingi's opinion was entitled to substantial weight as an evaluating medical source, absent good reasons to the contrary. Dr. Bingi opined that the Plaintiff would not be able to manage his own funds if awarded disability benefits, that the Plaintiff was "markedly limited in his abilities to make judgments about simple work related decisions, respond appropriately to changes with respect to work routine/setting, interact with others, and to understand, remember, and carry out complex tasks, but moderately limited in his abilities with respect to the performance of simple instructions/tasks." (R. 80.) The ALJ found that the Plaintiff's statements to Dr. Bingi were inconsistent with other statements made to medical providers. For example, in September 2016, the Plaintiff denied racing thoughts, mood fluctuations, and hallucinations to Dr. Bingi, but in July 2016, the Plaintiff told Nurse Sloffer that he was depressed and anxious. (R. 81.) The ALJ noted that the discrepancy, along with other similar discrepancies in the statements and symptoms reported to medical providers coincided with the Plaintiff's compliance, or lack thereof, with his medication regimen. (*Id.*) The ALJ cited multiple incidences in which the Plaintiff failed to show up to scheduled appointments for medication reviews and attributed much of the fluctuation in the Plaintiff's reported symptoms to his inconsistent follow-up and use of medication. (*e.g.*, *id.*) Thus, the ALJ discounted Dr. Bingi's opinion as inconsistent with the other evidence of record.

The mere existence of contrary evidence, especially by non-treating and non-evaluating sources, does not constitute a good reason to discount a evaluating medical source's opinion. Importantly, there is evidence of record from treating sources, such as Dr. Presley, Nurse Ellsworth, Dr. Mumtaz, and Dr. Musgrave—all of whom were entitled to controlling weight as treating sources absent specific and legitimate reasons to the contrary—that is consistent with Dr. Bingi's opinion. Therefore, the Court finds that the ALJ failed to cite good reasons for the weight she assigned to Dr. Bingi's opinion.

**E.     Additional Reasons for Discounting Medical Testimony**

The Court is also concerned about the legitimacy of the limited reasons that the ALJ did cite for discounting these medical source opinions, including what appears to be a heavy reliance on the Plaintiff's work history and inconsistency of treatment. "There is no inherent inconsistency in being both employed and disabled." *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016). "The fact that someone is employed is not proof positive that he is not disabled, for he may be desperate and exerting himself beyond his capacity, or his employer may be lax or altruistic." *Wilder v. Chater*, 64 F.3d 335, 338 (7th Cir. 1995); *see also Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003) (finding argument "would be correct were there a logical incompatibility between working full time and being disabled from working full time"); *Ghiselli*, 837 F.3d at 778 ("Persisting in looking for employment even while claiming to suffer from a painful disability might simply indicate a strong work ethic or overly-optimistic outlook rather than an exaggerated condition.").

The fact that the Plaintiff continued to work despite his alleged limitations seems to have weighed heavily against the Plaintiff in the ALJ's determination. (*See* R. 71–72, 76–77, 82.) But,

"[a] disabled person should not be punished for heroic efforts to work . . . ." *Hawkins*, 326 F.3d at 918; *see also Luttrell v. Berryhill*, No. 1:17-CV-2192, 2018 WL 558541, at *4 (S.D. Ind. Jan. 25, 2018 (A plaintiff "should not [be] discredited for attempting to work despite her physical limitations."). Although the ALJ may ultimately come to the same conclusion, on remand, the ALJ should weigh the Plaintiff's work history positively rather than as proof that he is not disabled.

As to the Plaintiff's non-compliance with treatment, the ALJ spent considerable time discussing missed appointments and matching up periods of worsening symptoms with a lack of treatment, speculating that due to his missed appointments, the Plaintiff had run out of medication. (*See* R. 76–77, 79.) While the consistency of treatment can be a factor indicating that symptoms are not as disabling as alleged, such a conclusion loses force in the case of a claimant with a mental impairment. "[F]ailure to comply with treatment may be a sign of mental disorder rather than a reason to discount its severity." *Fields v. Berryhill*, No. 2:16-CV-24, 2017 WL 1075120, at *3 (N.D. Ind. Mar. 21, 2017). As the Seventh Circuit has acknowledged, "mental illness in general and bipolar disorder in particular . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment." *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) (finding fault with the ALJ's conclusion that the plaintiff's inability to hold a job was unimportant because the plaintiff was able work when she took her medicine because the ALJ did not consider that the failure to take her medication could be a manifestation of the plaintiff's mental impairments). The ALJ's reliance on the Plaintiff's non-compliance with treatment with regard to his mental impairments, including bipolar disorder, is therefore an inappropriate basis on which to discount the opinions of treating and evaluating medical sources.

The Court also notes the Plaintiff's argument regarding the observations of the SSA field officers. The ALJ acknowledged the third-party reports of the Plaintiff's friend and father that tended to support the Plaintiff's subjective reports and found them unpersuasive. However, it is not clear from the ALJ's opinion that she considered the reports of the SSA field officers, who cited symptoms that would tend to support the medical source records that the ALJ discounted. The SSA field officers noted potential personal hygiene issues, speech problems, inability to sit still, difficulty walking (R. 713), and that the Plaintiff was very anxious and unable to stop moving (R. 742). While the ALJ need not consider every piece of evidence in the record, the Court finds it curious that the ALJ ignored the observations of the SSA's own field officers without comment when such observations tend to support the Plaintiff's claims.

## CONCLUSION

Accordingly, the Court REVERSES and REMANDS this case for further proceedings in accordance with this Opinion and Order. Because the Court is remanding on this issue, it need not consider the remainder of the parties' arguments. However, the Court is skeptical that the ALJ's step three analysis rises above the level of perfunctory, and in light of the Court's remand for reconsideration of the appropriate weight to be given to treating medical sources, the ALJ may well find that her conclusions support further limitations in the Plaintiff's RFC. The Court therefore encourages the ALJ to give a more detailed explanation of her reasoning on both of these issues.

SO ORDERED on September 5, 2018.

    s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT